# Cincinnati, Newport & Covington Railway Company v. England.

(Decided Feb. 23, 1934.)

GALVIN & TRACY for appellant.

JOHN J. HOWE and EARL RODNEY KING for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment for $1,000 recovered by appellee, Eugene England (plaintiff below), in the Campbell circuit court, against the appellant, the

Cincinnati, Newport & Covington Railway Company (defendant below), for injuries alleged caused plaintiff by the negligence of defendant's agents and servants in the operation of one of its street cars.

The agreed facts appear to be that on March 8, 1930, the appellant railway company operated a street railway through the city of Cincinnati, by bridge across the Ohio river, through the city of Newport into the city of Bellevue, Campbell county, Ky., and thence into Covington. Appellant's street car tracks through Bellevue are laid along Fairfield avenue, which runs east and west and is some 40 feet in width from curb to curb. The other streets involved are Foote, Ward, and Van Voast, all of which run north and south across Fairfield avenue.

On Fairfield avenue, appellant operated two street car tracks, laid about the center of the street—the one on its north side being for west-bound traffic and that on its south side for east-bound traffic. The length of the blocks on Fairfield avenue, made by the three aforementioned intersecting streets running north and south, according to the evidence, is some 215 feet or more.

The accident for which this action was brought occurred between Ward and Van Voast avenues at a point on Fairfield avenue some 75 to 100 feet west of Van Voast and resulted from a collision between the automobile of appellee, which he was then driving westwardly on Fairfield avenue, and an east-bound street car of the appellant.

To recover damages for injuries received as the result of this collision, the appellee, on March 7, 1931, filed his suit in the Campbell circuit court, alleging that on the night of March 8, 1930, while driving west on Fairfield avenue, Bellevue, Campbell county, Ky., in his automobile, he was run into by a street car of the defendant company, then operated by its agents and servants, which struck plaintiff's automobile with such force that he was thereby severely injured and disqualified for work; that as a further result of the injuries thus caused and received, he was compelled to incur and pay hospital, physicians', and nurses' bills in certain stated amounts; also that his car was so demolished as to require him to expend some $288.23 for its repair; and that he had been thus damaged by reason of the negligence of the defendant and its servants and agents in

the sum of $10,000, for which he prayed judgment with costs.

To the petition an answer was filed by defendant, traversing its allegations and pleading contributory negligence on the part of plaintiff, which was in turn controverted by plaintiff's reply.

Issues being thus joined and proof heard, the case was submitted to the jury, when it rendered a verdict awarding plaintiff damages in the sum of $1,000 and stating therein that its verdict was found "under instruction No. 4" as given it by the court, which was an instruction on contributory negligence and the last clear chance doctrine.

Complaining of this judgment, appellant prosecutes this appeal, insisting: (a) That the case should not have been submitted to the jury and that it was entitled to a peremptory instruction at the end of appellee's testimony; (b) if not then, it was entitled to a peremptory instruction at the end of the whole case; and (c) that, if the case was one for the jury, the court erred in giving instruction No. 4, upon which the verdict was based.

The appellee, Eugene England, hereinafter referred to as plaintiff, in support of the allegations of his petition, testified in his own behalf and by his witnesses that on the night of March 8, 1930, he had left his home at Dayton, Ky., and shortly after 10 o'clock proceeded to drive in a westwardly direction over Fairfield avenue towards Covington, Ky.; that as he approached the intersection of Van Voast and Fairfield avenues, he stopped his car in obedience to a red traffic light at that intersection; that upon its changing to green, he started his automobile forward, when it was severely bumped in the rear by another automobile, which caused it to jump and skid from the north side of the track, on which it had stood and was then moving forward, to the center of the street and car track left of it, when, because of this jar it had received, which impaired the operation of its motor, he found that he could drive it only very slowly or at a rate of less than 1 mile an hour, and, also, that the car was caused to jump in such a way that he was unable to turn or pull his car to the right from off the south or left side car track, or to move it fast enough to clear the south side track, onto which he had thus been bumped and driven, in time to avoid its

collision with the fast approaching east-bound street car; that he had driven in low gear for some 75 feet beyond this intersection when bumped before his car motor began to "take hold" or pick up speed, when he was then and there run into by the street car, as he was trying to turn and clear the track; that the street car did not stop after leaving the Foote street intersection, two blocks west of Van Voast, but had passed, without stopping, the intervening Ward street intersection and had approached plaintiff, running at a speed of some 18 or 20 miles an hour, without slowing or attempting to stop the car until he had thus run to within a few feet of him, when the motorman applied the car's brake and stopped it—but then too late to avoid running into and injuring him and his car. Plaintiff testified that there was an unobstructed view of the street and car tracks throughout the whole intervening distance between appellant's street car, as it left Foote street coming east, and plaintiff's automobile as it left the Van Voast intersection going west, and that plaintiff's disabled condition and car trouble, as he slowly advanced upon or near the car track—upon which appellant's street car was also approaching—were plainly visible to appellant's motorman, who was, as such, charged with the duty of here keeping constant lookout as to other then users of the street, but that appellant's motorman failed to discover, or, if discovered, to heed his danger, when, by the exercise of ordinary care in discharging his duty of lookout, he could have discovered plaintiff's helpless and dangerous condition in ample time to have then stopped the car and thereby have avoided running into and injuring plaintiff.

On the other hand, the evidence introduced for appellant is that the street car did not pass the Ward street intersection without stopping, but that it did there stop and let off a passenger, after which it again started up slowly and was proceeding at a low speed of not exceeding 8 or 10 miles an hour when its motorman saw plaintiff some 70 or 80 feet ahead, approaching the street car on or near the track upon which it was then running towards him, but that he did not, upon seeing him there driving his car, discover at that time any peril in the situation to plaintiff as the street car had the right of way, as was known to plaintiff, and that he reasonably presumed that plaintiff would in due time safely turn his car from off the track; and that he did

not discover any appearance of danger to plaintiff, arising from his alleged inability to leave the street car track, until plaintiff's car had come to within a few feet of the street car, when he instantly applied all the available means he had at hand to stop the street car to avoid a collision with plaintiff's car.

Appellant's testimony, as given by its servants in charge of its street car, as well as by some of its then passengers, is contradictory of appellee's claim that he was at the time driving upon the left side of the street, or on or near its south side car track, not through negligence, but because of his car having been driven into such position because of its having been so bumped at the intersection of Van Voast and Fairfield avenues as to cause it to skid and jump to that part of the street and which also had so destroyed the proper operation of his car motor and the running of the car as rendered him unable to either run it fast enough or stear it from off the said south or left side track in time to avoid the approaching street car's running against him.

Appellant, denying that plaintiff's driving upon the wrong side of the street and his failure to turn his car from off the south side track was due to these causes alleged by him, contends that he negligently did so and that his negligence in so doing so contributed to the happening of the accident as to bar his right to recover for his injuries alleged to have resulted from the collision caused thereby. It contends that plaintiff's testimony, to the effect that he was then vainly trying to get his car to move faster and get clear of the street car, before it reached him, but failed because the street car's fast moving caused him to misjudge the distance, in itself sufficiently shows that plaintiff's conduct was contributorily negligent and that it continued to be such even up to the moment of the collision; and, therefore, it insists that the doctrine of "the last clear chance" is not properly applicable to the facts of the situation thus depicted by plaintiff's own testimony to have here existed when the accident occurred. So arguing, it earnestly contends, therefore, that the court erred in permitting the jury to consider the case from this phase of the matter or doctrine of the last clear chance. Moreover, it insists that the court's alleged error, in so instructing the jury upon this phase of the case, is made the more apparent, and becomes more plainly preju-

dicial, in view of the fact that the jury expressly based its verdict in favor of plaintiff upon this specific charge which appellant contends was erroneously given by its instruction No. 4.

In response to appellant's criticism of this No. 4 instruction, given the jury as covering the law applicable to the contributory negligence and last clear chance phases of the case, it is to be noted that although the plaintiff, in his rather indefinite and lengthy account of how this accident occurred and what caused it, did make use of the expression substantially as claimed, in one part of his testimony, yet a fair consideration of all his testimony attempting to account for the happening of the accident, as given by him to the jury, when taken together shows that it was substantially to the effect that his car had been injured in its running and control from being bumped into at the street intersection, which caused it to jump and skid to the left side of the street, and from which position thereon he was thereafter unable to extricate it in time to avoid being run into by appellant's street car; that it was the bumping, and resulting injury to his car, rather than any negligence on his part, which placed him in a position of peril upon appellant's car tracks, which was easily discoverable by appellant's motorman had he been then performing his lookout duty; and that it was only by reason of the motorman's negligent failure in this, that he did not make an earlier or more timely discovery of plaintiff's peril, when he could have easily avoided injuring him by his then, or sooner, use of the means at hand to stop the street car. Appellant admits that its motorman discovered plaintiff's presence upon this track, upon which it was also then running its east-bound car, when plaintiff was some 75 or 80 feet ahead of him, but that he did not then treat the situation as one fraught with peril for plaintiff, nor was he so impressed with its potential menace as to again observe plaintiff's approach until he had come to within some 15 feet of him, when he "then gasped" and applied the air brakes, stopping the car within a distance of 5 or 6 feet, but even so, not before or in time to avoid its collision with plaintiff's car and his resulting injury.

Appellant contends that there was here no evidence whatever tending to show that it was in anywise remiss in the performance of any duty which it owed plaintiff upon this occasion and therefore that it was clearly,

both upon plaintiff's evidence and by all the evidence, entitled to a peremptory instruction. Plaintiff, on the other hand, contends that, even if he were contributorily negligent in driving upon appellant's car track, yet under the circumstances as testified to by him, his plight and peril when so doing could and should have been dis-. covered by appellant's motorman through the timely exercise of any ordinary care in discharging his lookout duty of the track, and that if he had so performed this duty, he would have sooner discovered his peril and have been able, by the use of the means then at hand, to have stopped the car and have thus avoided running into plaintiff's car and injuring him.

It is thus apparent, that by this conflicting testimony there was formed an issue of fact, as to whether or not appellant did or could have sooner discovered plaintiff's position of peril and as to whether he did, upon his discovery of it, then instantly use all the means available to avoid injuring plaintiff. The determination of this question was one of fact and, we conclude, was properly by the criticised instruction submitted to the jury for its consideration. The street and place thereon where this accident occurred, it may be conceded, was one over which appellant held right of way upon its car tracks, but this, its right, was yet subject to the duty, to exercise its right of running its cars thereon with due care and regard for the safety and welfare of the public, in its exercise of a like right to use the street, under penalty of being held responsible for its failure to use reasonable care resulting in harm or injury to others.

There was here evidence given the jury by the testimony of plaintiff and his witnesses that appellant had failed to exercise this duty or care required of it, either in or after discovering plaintiff's peril, and that, owing to such failure, it violated the last clear chance rule, which, had it been here properly observed, would have avoided its colliding with and injuring the plaintiff.

We have carefully read and considered the authorities cited by appellant, both in text and well-considered domestic cases, and, while approving the rule declared as applicable to the facts therein appearing, we are yet of the opinion that the facts in evidence in those cases distinguish them, in the applicable rules therein declared as controlling, from what should be the

governing rule of law here applicable to the different state of facts, found in the instant case. Appellant has thus cited and relied upon the case of Kentucky Traction & Terminal Co. v. Brackett, 210 Ky. 756, 276 S. W. 828, as being so analogous to the instant case as to make it controlling of it. There the evidence showed that the traction company's car was going south upon its interurban tracks, which ran along the side of the highway. Brackett was in an automobile going north upon the highway. They were not making a common use of the same road and neither there owed a lookout duty to the other. The automobile skidded upon the highway, left it and came upon the track of the traction company. The motorman testified he at once put his car in emergency and did all that he could to stop it but was unable to do so. The motorman's effort thus made upon his discovery of Brackett's peril was held to be a complete defense, for he owed Brackett—under the situation there presented—no lookout or other duty until Brackett came upon the track and he discovered his peril. The instant case is distinguishable from that case in its pivotal facts, in that here the accident occurred upon the city street of Bellevue, where the appellant owed to all co-users of it a constant lookout duty and it must be here held answerable if it breached that duty, or, that is to say, if by the exercise of ordinary care the motorman could and should have discovered that the plaintiff was in peril in time to have avoided injuring him by use of the means he had at hand, but failed in the discharge of either duty.

Instruction No. 4, criticised and here complained of, is as follows:

"If the jury believe from the evidence that at the time and place mentioned in the proof, the plaintiff failed to exercise ordinary care for his own safety, and that by reason of such failure, if any there was, he contributed to the injury, but for which it would not have happened, then you should find for the defendant, unless you further believe that, after the plaintiff's said failure to exercise ordinary care on his part, the motorman in charge of the street car perceived his danger, or could by ordinary care perceive the same and could have prevented the same by ordinary care, and failed to do so, whereby the injuries happened, then you will find for the plaintiff."

Appellant insists that while this instruction should not have been given at all, yet, if it was given, it should have embraced all the elements under the last clear chance doctrine—that is, it should have embraced the whole law applicable to it; that the instruction as given failed to do this, in that it failed to incorporate the elements (a) with means at his command; (b) with reasonable safety to the car; and (c) with reasonable safety to the passengers upon the car. It insists that these elements should have been submitted to the jury as a part of this instruction and the court's failure to incorporate them therein warranted the jury in believing that the motorman owed no duty to any one except the plaintiff or that there was no duty owing from him to his passengers, although, it is insisted, the law only requires the motorman to thus stop his car to avoid injuring another when in doing so he is also duly regarding the reasonable safety of his car and his passengers thereon.

We are not impressed with the merit of this contention here made in criticism of the instruction given and intended to cover the evidence heard as to the facts of this case. The motorman himself had here testified that when he discovered plaintiff's peril, when almost upon him or within 15 feet of him, he had instantly and properly used all means at hand by applying the brakes and stopping his car within 5 or 6 feet. From this it appears that all the means of stopping the car which he had were at once used by the motorman without any lack of regard for the safety either of his car or his passengers. The question here presented by the evidence was not whether the street car could be, by the use of available means, stopped while observing at the same time a due regard for the safety of the street car and its passengers, but was whether or not appellant's motorman negligently waited too long to apply the means at hand to stop his car after he discovered or should have discovered plaintiff's peril by a proper discharge of the lookout duty owing him.

We therefore conclude that if instruction No. 4 was in anywise erroneous, it was, at most, only formally, not substantially so, and was, therefore, not substantially, if at all, prejudicial to appellant. Instruction No. 4, when considered with the other instructions as given, we are of the opinion properly instructed the jury as to the law of the case upon the facts in evidence before it

and that plaintiff was entitled to have the issues of fact thereby made submitted to the jury. Therefore, we further conclude that the court did not err in refusing appellant a peremptory instruction.

For the reasons stated, we are of the opinion that the judgment of the trial court should be, and it is, affirmed.